# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

GLORIA AGUILUZ                                    CIVIL ACTION

VERSUS                                            NO: 18-5126

CITIBANK, N.A., ET AL                             SECTION: "S" (4)

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion for Judgment on the Pleadings** (Rec. Doc. 10) filed by defendant, Citibank, is **GRANTED** as to plaintiff's claims against Citibank for declaratory relief (Counts 1 and 2), under the Fair Debt Collection Practices Act, for unjust enrichment, for violation of "good faith," and for violation of the Louisiana Unfair Trade Practices Act, and the foregoing claims are **DISMISSED** as to Citibank;

**IT IS FURTHER ORDERED** that the **Motion for Judgment on the Pleadings** (Rec. Doc. 10) filed by defendant, Citibank, is **DENIED** in all other respects;

**IT IS FURTHER ORDERED** that the **Motion for Judgment on the Pleadings** (Rec. Doc. 12) filed by plaintiff, Gloria Aguiluz, is **DENIED**;

**IT IS FURTHER ORDERED** that the defendants shall provide an

**ACCOUNTING** of plaintiff's payments in question within **15 days** of entry of this order.

## I. BACKGROUND

Before the court are cross-motions for Judgment on the Pleadings, filed by defendant, Citibank, and plaintiff, Gloria Aguiluz, pro se.

Plaintiff seeks damages arising out of what she alleges was the illegal foreclosure and sheriff's sale of her former home, at 4424 Park Shore Drive in Marrero, Louisiana ("Property"). Plaintiff and another individual entered into a mortgage agreement dated December 26, 2007 securing a $202,202.00 loan, evidenced by a promissory note executed the same day (hereinafter, sometimes "the Agreement"). The mortgage was eventually assigned to defendant Citibank.

Under the terms of the Agreement, plaintiff was obligated to make monthly payments of principal and interest of $1,328.32, due by the first day of each month beginning February 1, 2008. In the event plaintiff failed to pay the full amount of any monthly payment on the date due, plaintiff would be in default, at which point the full amount of her loan debt, inclusive of interest, could be accelerated at the lender's option and made immediately due and payable, upon written notice of the default and of plaintiff's right to cure the default and reinstate the loan (and subject

to the satisfaction of various conditions).

With respect to foreclosure, plaintiff agreed that following the lender's acceleration of payment, the Property could be "seized and sold, with or without appraisal" "under . . . executory process." Plaintiff further agreed to "confess[] judgment and acknowledge[] to be indebted to Lender for all sums secured by [the Mortgage], in principal, interest, costs, expenses, attorneys' fees and other fees and charges."

In May 2012, plaintiff executed a loan modification agreement, reducing her payment to $902.69. According to plaintiff, until May 2016, plaintiff made timely monthly payments totaling $100,868.62.[1]

In May 2016, Fay Servicing, L.L.C. ("Fay") took over servicing of the loan. Plaintiff alleges that she made a $3814.88 payment to Fay which was never credited.[2] On July 8, 2016, the mortgage was assigned to Citibank.[3]

---

[1]Plaintiff's Motion for Judgment on the Pleadings, Rec. Doc. 12, p. 1.

[2]Complaint, ¶ 15. The allegation does not reflect the exact date the payment was made, and the exhibits to the Complaint do not include a copy of the cancelled check or other proof of payment.

[3]The mortgage certificate filed as an exhibit to Citibank's motion indicates that the mortgage was assigned to Citibank on July 8, 2016, and filed of record on August 4, 2016. Rec. Doc. 10-2.

Plaintiff further alleges that she contacted Fay on July 20, 2016, seeking a loan modification.[4] While it is not included in any of the documents provided by plaintiff, Defendants' answer includes a letter to plaintiff and her co-borrower from Fay, dated August 15, 2016, and advising plaintiff that her loan was in default for June, July, and August of 2016, and that she was required to make a payment of $3,085.45 by September 19, 2016 in order to cure the default.[5]   In response to a phone call from plaintiff, on August 16, 2016, Fay Service Manager James Ku emailed plaintiff seeking identifying information, and thereafter began a spate of emails related to "borrower assistance," presumably the loan modification application.[6] On September 12, Ku informed plaintiff that she should hear back by September 23, 2016 from underwriting on the status of her modification application. By letter dated September 22, 2016, Fay denied the loan modification, instead recommending a short sale, an option plaintiff chose not to pursue. The email chain between Ku and plaintiff concerning the modification application

---

[4]Complaint, ¶ 16.

[5]Answer, Rec. Doc. 7, Exh. 2. The letter does not reflect that it was sent via certified mail, and plaintiff alleges not to have received any formal notice of default until she received a foreclosure notice on March 9, 2017.

[6]Plaintiff's Motion for Judgment on the Pleadings, Exh. E.

which continued through September 22, 2016 makes no reference to the August 15 default notice.

Plaintiff contends that in October 2016, she applied to a program to help distressed homeowners called the "The Making Home Affordable Modification Program," and that a modification was granted following a three-way telephone conference between program representative Alan Henderson, Fay Service Manager Ku, and plaintiff, held on October 6, 2016.[7] She further contends that it was agreed among them that plaintiff would begin making "trial payments" of $881.97 to a Wells Fargo account named "Samaritan Law Center," which changed its name in December 2016 to "National Civilian Law Center." The record includes transaction receipts reflecting that every month from October 2016 through and including April 2017, plaintiff made the payments, totaling $6173.79.[8] The record does not include any evidence as to how the payments were applied. Plaintiff has also submitted correspondence between herself and Henderson, spanning October 2016 to August 2017, in which she attempts to put Henderson in touch with Ku, and, on March 11, 2017, to ask for direction on how to respond to the foreclosure notice.

---

[7]Plaintiff's Motion for Judgment on the Pleadings, Rec. Doc. 12, p. 2

[8]Complaint, Exh. D.

Based on Fay's conclusion that plaintiff failed to cure her default after receiving notice, on March 9, 2017, counsel for Fay, defendant The Law Offices of Herschel C. Adcock, Jr., L.L.C. ("Herschel Adcock"), forwarded correspondence to plaintiff advising that Fay "has accelerated the entire unpaid present balance and declared same due and owing at this time, together with the stipulated interest, attorney's fees and allowable escrow items and charges."[9] In rem foreclosure proceedings were commenced in the 24th Judicial District Court for the Parish of Jefferson, on March 24, 2017. A sheriff's auction was scheduled for June 26, 2017, but was cancelled after plaintiff filed a Chapter 13 bankruptcy on or around April 29, 2017.[10] The bankruptcy was apparently dismissed,[11] and on October 10, 2017, plaintiff resumed making monthly payments in the amount of $1407.44, first to Fay, and beginning in December 2017, to defendant, FCI Lender Services, Inc. ("FCI"), as a result of another servicing transfer. These payments, which totaled $8444.64 and reflect they were negotiated by Fay and FCI, continued until March,

---

[9]Complaint, Exh. F.

[10]Plaintiff's Motion for Judgment on the Pleadings, Rec. Doc. 12, p. 2.

[11]The record does not reflect the date or the reason for the bankruptcy dismissal, although plaintiff attributes it to her bankruptcy attorney's negligence.

2018.[12]

On April 23, 2018, plaintiff sent correspondence captioned as a R.E.S.P.A.[13] Qualified Written Request (QWR) to FCI, by certified mail. The letter identified plaintiff and her co-borrower by name, and stated that:

> We are disputing the accuracy of the current owed balance of our mortgage loan account. Specifically, there appears to be discrepancies as to how our mortgage loan account has been serviced and how credits for money that we have paid have been applied to our mortgage loan account. Also, it appears you have been charging our account unauthorized fees. Please investigate our mortgage loan account and provide us the results of your investigation.

Plaintiff alleges that no response was ever received to the QWR.

On May 27, 2018, plaintiff filed an application for preliminary injunction in the 24th Judicial District Court for the Parish of Jefferson, seeking to arrest the seizure and sale of her home.[14] The application includes a certificate of service reflecting that it was served on Herschel C. Adcock, Jr. by first class mail on April 27, 2018. According to plaintiff, the 24th Judicial District Court did not

---

[12]Complaint, Exh. E.

[13]The Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 et seq.

[14]Complaint, Exh. I. The document reflects that it was filed for record in the 24th JDC on April 27, 2018 at 11:55 a.m. It appears in the docket sheet for the 24th JDC foreclosure case with the note: "File document with no code: Application for Preliminary Injunction." Defendants' Answer, Rec. Doc. 7, Exh. 4.

acknowledge or hold a hearing on the preliminary injunction.[15] On May 2, 2018, the Property was sold to Citibank at a public auction conducted by the sheriff. The sheriff's deed was filed of record in Jefferson Parish on May 10, 2018. Plaintiff did not seek a timely suspensive appeal from the judgment of seizure and sale in accordance with Article 2642 of the Louisiana Code of Civil Procedure.

On May 21, 2018 plaintiff filed the instant suit. With respect to Citibank, plaintiff alleges that she timely made all payments on the note, but that Citibank refused "to properly apply credits to Plaintiff's loan account for payments Plaintiff has made" and charged "unauthorized fees to Plaintiff's monthly payments." She further alleges that Citibank failed "to provide Plaintiff with the required notice of default before accelerating and undertaking foreclosure proceeding[s] against her." Plaintiff seeks declaratory relief, as well as damages for breach of contract, unjust enrichment, violations of "good faith," the Louisiana Unfair Trade Practices Act ("LUTPA"),[16] and the Fair Debt Collections Practices Act ("FDCPA").

With respect to defendant FCI, plaintiff seeks damages for alleged violations

---

[15]Complaint, ¶ 46.

[16]Plaintiff's Complaint, ¶¶ 102 & 103, reference "the Unfair Practices Act," without referencing a specific statute. In consideration of plaintiff's pro se status, the court construes this as a claim under LUTPA and addresses it as such.

of "good faith," LUTPA, unjust enrichment, the FDCPA, the Truth in Lending Act, and the Real Estate Settlement Procedures Act. As to defendant Herschel C. Adcock, Jr. (counsel for Fay), plaintiff requests damages for violations of "good faith," LUTPA, and the FDCPA.

## II. LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). <u>In re Deepwater Horizon</u>, 500 F. App'x 355 (5th Cir. 2012). Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007) (quoting <u>Bell Atl. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 & 1973 n. 14 (2007)).  A claim is plausible on its face when the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

Twombly, 127 S.Ct. at 1965.  The court "must accept all well-pleaded facts as true

and view them in the light most favorable to the non-moving party." In re S. Scrap

Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008).  However, the court need

not accept legal conclusions couched as factual allegations as true. Iqbal, 129 S.Ct.

at 1949-50. While "pro se complaints are held to less stringent standards than

formal pleadings drafted by lawyers, . . . regardless of whether the plaintiff is

proceeding pro se or is represented by counsel, conclusory allegations or legal

conclusions masquerading as factual conclusions will not suffice to prevent a

motion to dismiss." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir.

2002).

Generally, in considering a motion to dismiss for failure to state a claim, a

district court may consider only the contents of the pleading and the attachments

thereto. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000)

(citing Fed. R. Civ. P. 12(b)(6)).  However, when ruling on a motion to dismiss a

pro se complaint, "a district court is required to look beyond the plaintiff's formal

complaint and to consider as amendments to the complaint those materials

subsequently filed, [and] . . . may consider documents attached to a motion to

dismiss if they are referred to in the plaintiff's complaint and are central to the

plaintiff's claim." <u>Castrillo v. Am. Home Mortg. Servicing, Inc.</u>, 2010 WL 1424398, at *2–3 (E.D. La. Apr. 5, 2010)(internal citations and quotations omitted).

## III. CITIBANK'S MOTION

In its motion, Citibank seeks judgment on the pleadings on all of the claims brought against it, arguing that plaintiff's claims are precluded by Louisiana Code of Civil Procedure 2642, and La. R.S. § 13:4112.

Louisiana Code of Civil Procedure article 2642 provides in part: "Defenses and procedural objections to an executory proceeding may be asserted either through an injunction proceeding to arrest the seizure and sale as provided in Articles 2751 through 2754, or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both." La. Code Civ. art. 2642(A).

Louisiana Revised Statute § 13:4112 provides in pertinent part:

No action may be instituted to set aside or annul the judicial sale of immovable property by executory process by reason of any objection to form or procedure in the executory proceedings, or by reason of the lack of authentic evidence to support the order and seizure, where the sheriff executing the foreclosure has either filed the proces verbal of the sale or filed the sale for recordation in the conveyance records of the parish.

However, these provisions are not applicable to the case at bar, because

plaintiff's Complaint does not seek to set aside or annul the judicial sale of the Property. Rather, plaintiff seeks declaratory judgments and damages stemming from Citibank's alleged breach of contract, statutory violations, and failure to act in good faith. See, e.g., Veal v. Wells Fargo Bank, N.A., 2016 WL 6024534, *2 (E.D. La. 2/14/16)(Fallon, J.).

Moreover, to the extent Citibank argues that plaintiff could never seek to annul the foreclosure because she did not seek to enjoin the sale or take a suspensive appeal, that is inaccurate. "A mortgagor who failed to enjoin the sale of property by executory process or who did not take a suspensive appeal from the order directing the issuance of the writ of seizure and sale, may nonetheless institute and maintain a direct action to annul the sale on certain limited grounds, provided the property was adjudicated to and remains in the hands of the foreclosing creditor[17]. . . . A sale through executory process can be attacked by means of a direct action, filed after the sale has been completed, solely on the ground that there were defects in the proceedings which are substantive in character and which strike at the foundation of the executory proceeding."

---

[17]The record reflects that Citibank purchased the Property at the Sheriff's sale and there is no documentation indicating it has since changed hands to a third party.

Deutsche Bank Nat. Tr. Co. v. Carter, 59 So. 3d 1282, 1286 (La. App. 5 Cir. 1/25/11), writ denied, 61 So. 3d 691 (La. 4/8/11).

Citibank further argues plaintiff has not stated a cause of action against it, because Citibank was entitled to commence foreclosure under the provisions of the agreement, and it is undisputed that plaintiff received notice of the default and failed to bring the loan current. However, even a cursory review of the pleadings reflects that these matters are not undisputed. Plaintiff has specifically alleged that she did not receive the August 15, 2016 pre-acceleration notice,[18] and further alleges that she made numerous payments that were not credited.[19] Accordingly, this argument does not support a finding that Citibank is entitled to a judgment on the pleadings.

## A.      Counts 1 & 2 - Declaratory Relief

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could

---

[18]Complaint, ¶ 34.

[19]Complaint, ¶ 36.

be sought." 28 U.S.C. § 2201(a). The Declaratory Judgment Act is "an authorization, not a command." <u>Pub. Affairs Assocs., Inc. v. Rickover</u>, 369 U.S. 111, 112 (1962); <u>see also</u>, <u>Soc'y of Separationists, Inc. v. Herman</u>, 959 F.2d 1283, 1287 (5th Cir. 1992. Thus, federal courts have wide discretion to grant or deny declaratory judgment. <u>See</u> <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286 (1995).

In Count 1, plaintiff seeks an affirmative declaration that Citibank did not provide her with the notice required under the agreement before accelerating her loan, including, <u>inter alia</u>, notice of the default, the action required to cure it, and a date by which it must be cured before acceleration would occur, and thereby breached its obligation to plaintiff. In Count 2, plaintiff seeks a declaratory judgment that Citibank did not properly apply credits to her mortgage account in accordance with the agreement, thereby breaching the agreement. The declaratory judgments sought in these two counts mirror the relief sought by plaintiff in Counts 3 and 4 for breach of contract. Resolution of the breach of contract claims will resolve the issues raised in the delcaratory judgment counts. Thus, plaintiff's request for declaratory judgment is redundant, and subject to dismissal. <u>See</u> <u>Veal v. Wells Fargo Bank. N.A.</u>, 2016 WL 6024534, *6 (Fallon, J.) (E.D. La. 10/14/16); <u>see also</u>, <u>Narvaez v. Wilshire Credit Corp.</u>, 757 F. Supp. 2d 621, 636 (N.D. Tex.

2010); <u>Kougl v. Xspedius Mgmt. Co. of DFW, L.L.C.</u>, 2005 WL 1421446, at *4 (N.D.Tex. June 1, 2005)(denying as redundant a declaratory judgment claim seeking contract interpretation where this would be resolved as part of breach of contract action); <u>accord</u>, <u>Steele v. Green Tree Servicing, L.L.C.</u>, 2010 WL 3565415, at *10 (N.D. Tex. Sept. 7, 2010), <u>aff'd</u>, 453 F. App'x 473 (5th Cir. 2011); 6 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1406, at 30-31 (3d ed. 1999) ("When the request for declaratory relief brings into question issues that already have been presented in plaintiff's complaint and defendant's answer to the original claim, however, a party might challenge the counterclaim on the ground that it is redundant and the court should exercise its discretion to dismiss it.).

Accordingly, judgment on the pleadings denying plaintiff's prayer for declaratory relief is granted.

**B.    Count 5 - Fair Debt Collection Practices Act ("FDCPA")**

Plaintiff alleges that Citibank is liable to her under the FDCPA, because the FDCPA forbids threatening to take any legal action that cannot legally be taken, and Citibank did precisely that by threatening foreclosure without having met all the contractual preconditions to foreclose. Citibank argues that it cannot be liable

under the FDCPA, because it is not a debt collector.

To state a claim under the FDCPA, a plaintiff must establish, <u>inter alia</u>, that the defendant is a "debt collector" as defined by the FDCPA. <u>Saragusa v. Countrywide</u>, 2016 WL 1059004, at *5 (E.D. La. Mar. 17, 2016) (Vance, J.), <u>aff'd sub nom</u>. <u>Saragusa v. Countrywide Home Loans, Inc.</u>, 707 F. App'x 797 (5th Cir. 2017)(citations omitted). Creditors are excluded from regulation under the FDCPA. 15 U.S.C. § 1692a. Under the FDCPA, debt collectors are defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Thus, banks attempting to collect their own debts are not debt collectors under the FDCPA. <u>Saragusa</u>, 2016 WL 1059004, at *5; <u>see also</u>, <u>Thomasson v. Bank One, La., N.A.</u>, 137 F. Supp. 2d 721, 724 (E.D. La. 2001)("In collecting on its own debts, Bank One does not meet the criteria of a 'debt collector' pursuant to the FDCPA.").

In this case, Citibank is not a debt collector, but a creditor bank attempting to collect its own debt. As such, it is not subject to the FDCPA. It is noted that plaintiff specifically alleged that Citibank was assigned the deed after an alleged

default had occurred.[20]  Presumably, this allegation is an effort to bring Citibank

into the exception to the creditor exclusion contained at 15 U.S.C. § 1692a(4). That

provision states that a "'creditor' means any person who offers or extends credit

creating a debt or to whom a debt is owed, *but such term does not include any*

*person to the extent that he receives an assignment or transfer of a debt in default*

solely for the purpose of facilitating collection of such debt for another."

(Emphasis added.)  But, even accepting as true the allegation that Citibank

acquired the debt after it was in default, nothing in the pleadings or exhibits thereto

suggests that Citibank was acting for any entity other than itself. Thus, the fact that

Citibank may have acquired the debt while it was in default is irrelevant.

Accordingly, because as a matter of law the FDCPA does not apply to

defendant Citibank, it is entitled to judgment on the pleadings dismissing the claim

against it alleged in Count 5.

## C.    Count 8 - Unjust Enrichment

Plaintiff contends that Citibank was unjustly enriched by accepting mortgage

payments on her account, but not crediting them against her loan.

Under Louisiana law, "[a] person who has been enriched without cause at

---

[20]Complaint, ¶ 75.

the expense of another person is bound to compensate that person. . . . The remedy

declared here is subsidiary and shall not be available if the law provides another

remedy for the impoverishment or declares a contrary rule." La. Civ. Code art.

2298. Thus, "unjust enrichment is a remedy of last resort under Louisiana law and

is only applicable to fill a gap in the law where no express remedy is provided."

Conerly Corp. v. Regions Bank, 2008 WL 4975080, at *9 (E.D. La. Nov. 20,

2008)(internal quotations and citations omitted).  Accordingly, "where a contract

exists, there can be no recovery in quantum meruit." Bamburg Steel Buildings, Inc.

v. Lawrence General Corp., 817 So. 2d 427, 438 (La. Ct. App. 2002).

In this case, Citibank's obligations to plaintiff arise under the promissory

note and mortgage and plaintiff has alleged breach of contract against Citibank for

violation of the terms of the mortgage. Because plaintiff has a remedy at law, she

may not pursue a claim for unjust enrichment. Accordingly, Citibank is entitled to

judgment on the pleadings dismissing the unjust enrichment claim alleged against

it in Count 8.

**D.    Count 9 - Violation of "Good Faith"**

Plaintiff also alleges that Citibank "violated the covenant of good faith and

fair dealing and the Unfair Practices Act, and engaged in wrongful foreclosure with

its co-defendants."[21]

The Agreement does not include an explicit "covenant of good faith and fair dealing." Moreover, under Louisiana law, there is no implied fiduciary obligation owed by a lender to its customer. The Louisiana Revised Statutes provide:

> No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. . . . This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.

La. R.S. §6:1124.

There are no allegations that Citibank entered into any written agency or trust agreement with plaintiff, or otherwise agreed to act as a fiduciary. Thus, Citibank cannot be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation of good faith with respect to plaintiff. Rather, under the applicable statute, Citibank's obligation is limited to performance in accordance with the Agreement.

---

[21] Complaint, ¶ 102.

With respect to plaintiff's "Unfair Practices" allegation, it is not clear if plaintiff, who is proceeding pro se, intended to invoke the Louisiana Unfair Trade Practices Act, La. R.S. § 15:1401 et seq. ("LUTPA"). LUTPA grants a private right of action for the recovery of damages to "any person who suffers any ascertainable loss ... as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405." La.Rev.Stat. Ann. 51:1409. However, it also contains an explicit exemption for "[a]ny federally insured financial institution." La. R.S. § 51:1406(1). Because Citibank is a federally insured financial institution, it is exempt from plaintiff's LUTPA claim and entitled to a judgment on the pleadings on this issue.

Finally, the "wrongful foreclosure" claim included in Count 9,[22] is duplicative of plaintiff's breach of contract claim and thus subject to dismissal as redundant.

## IV. PLAINTIFF AGUILUZ'S MOTION

Plaintiff has also filed a motion for judgment on the pleadings, seeking a ruling that defendants wrongfully foreclosed on her mortgage, and

---

[22]Complaint, ¶ 103.

failed to credit payments made by her totaling $15,618.61. Plaintiff's argument appears to be that Citibank and the other defendants violated the agreement by failing to properly credit payments made by her against her loan with Citibank, and that as a result considered her in default when she was not in default.

The exhibits attached to plaintiff's complaint reflect that a total of $14,618.43 in payments were made by her, in the time period spanning October 11, 2016 through February 27, 2018. Some of the cancelled checks clearly reflect they were negotiated by Fay and FCI. In addition, she specifically alleges that a payment was made by her to Fay on or about April 4, 2016 in the amount of $3814.88, which "disappeared."[23] Neither Citibank's motion for judgment on the pleadings, nor its opposition to plaintiff's motion, provide any explanation for what happened to these payments. While the defendants' failure to explain where and how the payments in question were applied is troubling, that fact alone does not entitle plaintiff to a judgment on the pleadings in her favor at this juncture.

Accordingly, plaintiff's motion for judgment on the pleadings is

---

[23]Complaint, ¶ 15.

denied, but **IT IS HEREBY ORDERED** that the defendants provide an **ACCOUNTING** of the payments in question within **15 days** of entry of this order;

**IT IS FURTHER ORDERED** that plaintiff's claims for declaratory relief against Citibank (Counts 1 and 2) are hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that plaintiff's claim under the FDCPA against Citibank is hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that plaintiff's claim for unjust enrichment against Citibank is hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that plaintiff's claims for violation of "good faith" and for violation of the Louisiana Unfair Trade Practices Act, La. R.S. § 15:1401 et seq., against Citibank are hereby **DISMISSED**.

New Orleans, Louisiana, this  2nd   day of November, 2018.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**