# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GLORIA AGUILUZ** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-5126** |
| **CITIBANK, N.A., ETC., ET AL** | **SECTION: "S" (4)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment** filed by Citibank, N.A. as Trustee for CMTLI Asset Trust ("Citibank") (Rec. Doc. 45) is **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment** filed by FCI Lender Services, Inc. ("FCI") (Rec. Doc. 42) is **GRANTED in part** and **DENIED in part**. Summary Judgment is granted as to plaintiff's claims against FCI for violations of the Fair Debt Collection Practices Act (Count 5) and the Truth in Lending Act (Count 6), and these claims are dismissed. Summary judgment is denied as to plaintiff's claims under the Real Estate Settlement Procedures Act (Count 7) and the Louisiana Unfair Trade Practices Act (Count 9).

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment** filed by the Law Office of Herschel C. Adcock, Jr., LLC ("Adcock") (Rec. Doc. 43) is **GRANTED**, and plaintiff's claims against Adcock are dismissed.

## I. BACKGROUND

This matter arises out of a foreclosure on property owned by the plaintiff. Detailed facts have been set forth in the court's previous order. Rec. Doc. 22. In its prior order, the court granted judgment on the pleadings dismissing plaintiff's claims against Citibank for declaratory

judgment (Counts 1 and 2), under the Fair Debt Collections Practices Act (Count 5), for unjust enrichment (Count 8), and for violation of "good faith" under the Louisiana Unfair Trade Practices Act (Count 9). The only remaining claims against Citibank are for breach of contract (Counts 3 and 4). Citibank now moves to dismiss the claims in Counts 3 and 4, arguing that no material fact issues exist which would preclude summary judgment.

Plaintiff has also alleged claims against FCI for the following: violation of the Fair Debt Collection Practices Act (Count 5); violations of the Truth in Lending Act (Count 6); violation of the Real Estate Settlement Procedures Act (Count 7); and violations of good faith under the Louisiana Unfair Trade Practices Act (Count 9). FCI now moves to dismiss the claims against it, arguing that no material fact issues exist which would preclude summary judgment.

Plaintiff has also alleged claims against Adcock for violation of the Fair Debt Collection Practices Act (Count 5) and the Louisiana Unfair Trade Practices Act (Count 9). Adcock now moves to dismiss the claims against it, arguing that no material fact issues exist which would preclude summary judgment.

Plaintiff opposes the motions.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any

material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 477 U.S. 242 (1986).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents properly to support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## III. ANALYSIS

### A. **Motion for Summary Judgment by Citibank**

Plaintiff's claims for breach of contract against Citibank are premised on two grounds: that Citibank did not provide plaintiff notice of default prior to accelerating the note and instituting foreclosure proceedings (Count 3); and that Citibank failed to apply her payments to her account as required by the contract, thus causing her account to be in default (Count 4). In

3

moving for summary judgment, Citibank points to the August 15, 2016 letter from loan servicer Fay Servicing, stating that "This letter is formal notice by Fay Servicing, LLC. . ., on behalf of Citibank . . . that you are in default under the terms of the documents creating and securing your Loan . . .for failure to pay amounts due." Rec. Doc. 45-6. The letter goes on to advise plaintiff of her right to cure the default and all other legally required notices.

This evidence establishes that there is no genuine issue as to any material fact on the question whether notice of default was sent to plaintiff. The burden, therefore, shifts to plaintiff to produce evidence of the existence of a genuine issue for trial. Plaintiff has not introduced any such evidence. Accordingly, Citibank is entitled to summary judgment dismissing the breach of contract claim on issue of notice of default.

This court, in connection with its prior ruling, ordered Citibank to provide it with a detailed accounting of all of the payments received from plaintiff and how they were applied. Citibank complied, providing documentation that during the time it owned the loan, it received three payments, and credited them to plaintiff's account. Rec. Docs. 24, 30. The co-defendant loan servicing company, FCI, also provided payment history and documentation, consistent with Citibank's assertions. Rec. Docs. 23, 29. Accordingly, Citibank has pointed to record evidence establishing that it correctly applied plaintiff's payments.

In opposition, plaintiff maintains that payments were misapplied because payments made by her to an entity known as the "Making Home Affordable" program were not applied to her account. The record reflects that plaintiff contacted representatives of that program, and made monthly payments of $881.97 from October, 2016 through January, 2017, to an account

4

denominated "Samaritan Law Center," and from February, 2017 through April, 2017 to "National Civilian Law Center," totaling $6173.79. Correspondence in the record indicates that in October, 2016, Samaritan Law Center sent a "Cease and Desist" letter and "Borrower's Authorization" to Fay Servicing (who was servicing the loan at that point), representing that it was plaintiff's legal counsel, and directing that all future communications regarding the loan go through it. Plaintiff also argues that Fay Manager James Ku participated in an October 6, 2016 conference call with herself and Making Home Affordable representative Allan Henderson, in which Ku, on behalf of Fay, agreed that plaintiff would begin making trial payments to Samaritan Law Center. Citibank contends that neither it nor its servicer, Fay, had any relationship with Samaritan Law Center, even though the accounting statement provided to the court lists Samaritan Law Center of Irvine, California on the account. Moreover, correspondence provided by plaintiff reflects that in January 2017, Ku reached out to her because he was having difficulty contacting Allan Henderson.

    Citibank maintains that neither it nor Fay authorized Samaritan Law Center or National Civilian Law Center to accept any payments from plaintiff on their behalf. Despite this factual dispute regarding what relationship or agreement existed between Citibank, its servicers, plaintiff, and the Samaritan Law Center, and despite plaintiff's genuine belief that she was participating in a modification program based on her conversation with Ku, as well as her monthly payments to Samaritan Law Center and National Civilian Law Center, there is no writing reflecting a modification of the loan agreement.

    "Oral agreements to modify a loan are not actionable." Giuffria v. Metro Bank, 735 So.

2d 941, 942 (La. App. 4 Cir. 5/26/99)(citing La. R.S. 6:1122; Whitney National Bank v. Rockwell, 661 So. 2d 1325 (La.10/16/95); Casey v. Hibernia Corp., 709 So. 2d 933 (La. App. 4 Cir. 3/4/98)). "The Louisiana Credit Agreement Statute, La. R.S. 6:1121, et seq., operates as a 'statute of frauds' for the credit industry . . . to prevent potential borrowers from bringing claims against lenders based on oral agreements." Bass v. Chase Home Fin. LLC, 2010 WL 3922709, *2 (E.D. La. Oct 1, 2010) (citing EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA, 467 F.3d 466, 469 (5th Cir. 2006) (other citations and internal quotations omitted). Moreover, there is no record evidence that Citibank received, but failed to properly apply, any payments by plaintiff. It appears that the alleged payments went directly to Samaritan Law Center and National Civilian Law Center.

Accordingly, plaintiff has failed to establish the existence of a genuine issue of fact for trial, and Citibank is entitled to summary judgment on the breach of contract claim related to application plaintiff's payments.

**B.** **Motion for Summary Judgment by FCI**

Plaintiff has alleged claims against FCI for the following: violation of the Fair Debt Collection Practices Act (Count 5); violations of the Truth in Lending Act (Count 6); violation of the Real Estate Settlement Procedures Act (Count 7); and violations of good faith under the Louisiana Unfair Trade Practices Act (Count 9). FCI argues that dismissal is warranted because no material fact issues exist which would preclude summary judgment.

*(1.) Fair Debt Collection Practices Act*

The Fair Debt Collection Practices Act ("FDCPA"), at Title 15, section 1692e(10)

prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Under section 1692e(5), debt collectors are prohibited from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." Plaintiff alleges that FCI violated the FDCPA by making false representations in connection with her debt. Specifically, she alleges that FCI threatened legal action (foreclosure) that it could not legally take, because it failed to provide her with the legally required notice of default prior to accelerating the loan.

The record of this matter includes an August 15, 2016 letter from loan servicer Fay Servicing, stating that "This letter is formal notice by Fay Servicing, LLC. . ., on behalf of Citibank . . . that you are in default under the terms of the documents creating and securing your Loan . . .for failure to pay amounts due." Rec. Doc. 45-6. The letter advises plaintiff of her right to cure the default and all other legally required notices. Plaintiff has not introduced any countervailing evidence on this point. Thus, the court finds that plaintiff received proper notice of default. Moreover, advising plaintiff of an actionable claim under the terms of her loan does not constitute a threat to take action that cannot legally be taken. Accordingly, FCI is entitled to summary judgment on the FDCPA claim.

*(2.) Truth in Lending Act*

The Truth in Lending Act ("TILA") requires a lender in a commercial credit transaction to disclose to a borrower certain terms and conditions of the transaction prior to closing the loan. Edwards v. Your Credit Inc., 148 F.3d 427, 432 (5th Cir. 1998)(citing 15 U.S.C. § 1601(a)). Assignees of the original lender are liable only "if the violation for which such action or

7

proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(e)(1). A servicer of consumer loans "shall not be treated as an assignee of such obligation ... unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1).

In the present case, FCI was a servicer of plaintiff's loan, and there are no allegations or evidence that FCI ever owned the obligation. Accordingly, it is not subject to liability under TILA as alleged by plaintiff, and FCI is entitled to summary judgment on plaintiff's TILA claims.

### *(3.) Real Estate Settlement Procedures Act*

Plaintiff has also alleged a claim against FCI under the Real Estate Settlement Procedures Act ("RESPA) § 2605(e) contending that, based on her belief that payments were not properly being applied and unauthorized fees were being charged, she sent FCI a Qualified Written Request ("QWR") seeking information as to the accuracy of her mortgage loan account and how it was being serviced. Rec. Doc. 42-25. She further alleges that FCI failed to respond to her QWR.

> Under section 2605(e) of RESPA,
>
> [i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
>
> Not later than 30 days after receipt, the servicer must
>
>     (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a

written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605.

FCI contends that it satisfied its obligation under the statute by sending plaintiff a copy of the account payment histories. See Rec. Doc. 42-26. The court has reviewed this document, and concludes that its content – 6 pages of single-spaced data entries, with labels like "corporate advance adjustment" and "loan boarding" – is indecipherable to many average consumers and not responsive to plaintiff's request or consistent with the requirements of the statute. Specifically, it does not contain a written explanation or clarification that includes a statement of the reasons why FCI believed plaintiff's account was correct as determined by FCI, or the name

and telephone number of an individual employed by FCI who could provide assistance to plaintiff. Moreover, there is no indication on the document as to when it was sent, so it is unclear if either the 5-day or 30-day response deadlines were met. Accordingly, the court finds that FCI is not entitled to summary judgment on plaintiff's RESPA claim.

### *(4.) Louisiana Unfair Trade Practices Act*

Plaintiff also alleges that FCI "violated the covenant of good faith and fair dealing and the Unfair Practices Act, and engaged in wrongful foreclosure with its co-defendants." The court construes this as a claim for violation of the Louisiana Unfair Trade Practices Act, La. R.S. § 15:1401 et seq. ("LUTPA"). LUTPA grants a private right of action for the recovery of damages to "any person who suffers any ascertainable loss ... as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405." La. Rev. Stat. 51:1409.

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A). It affords a private right of action to "[a]ny person who suffers any ascertainable loss" as a result of the unlawful conduct. § 51:1409(A). To succeed in a LUTPA claim, a plaintiff must "prove some element of fraud, misrepresentation, deception or other unethical conduct." IberiaBank v. Broussard, 907 F.3d 826, 839–40 (5th Cir. 2018)(quoting Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., 292 F.3d 471, 480 (5th Cir. 2002)).

Courts determine what constitutes an unfair trade practice on a case-by-case basis. Id. However, "the range of prohibited practices under LUTPA is extremely narrow and includes

10

only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct." Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc., 35 So. 3d 1053, 1060 (La. 2010)). Louisiana courts have found that violations of statutes may (but do not necessarily) constitute a LUTPA violation. See, e.g., Capitol House Pres. Co. v. Perryman Consultants, Inc., 725 So. 2d 523, 530 (La. App. 1st Cir. 1998). The "defendant's motivation is a critical factor." IberiaBank, 907 F.3d at 840 (quoting Monroe v. McDaniel, 207 So.3d 1172, 1180 (La. App. 5 Cir. 2016).

In this case, plaintiff has adequately alleged that defendant violated her rights under the RESPA by failing to respond to her Qualified Written Request. Whether that violation amounted to a LUTPA violation will depend on the defendant's motivation. A defendant's motivation is necessarily a fact issue, not susceptible to resolution on a motion for summary judgment, absent conclusive record evidence which is not present here. Accordingly, FCI is not entitled to summary judgment on plaintiff's LUTPA claim.

**C.    Motion for Summary Judgment by Adcock**

Plaintiff has alleged claims against Adcock for violation of the Fair Debt Collection Practices Act (Count 5) and the Louisiana Unfair Trade Practices Act (Count 9). Adcock now moves to dismiss those claims arguing that no material fact issues exist which would preclude summary judgment.

*(1.) Fair Debt Collection Practices Act*

The Fair Debt Collection Practices Act ("FDCPA"), at Title 15, section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect

11

any debt or to obtain information concerning a consumer." Under section 1692e(5), debt collectors are prohibited from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." Plaintiff alleges that Adcock violated the FDCPA by making false representations in connection with her debt. Specifically, she alleges that Adcock threatened legal action (foreclosure) that it could not legally take, because it failed to provide her with the legally required notice of default prior to accelerating the loan.

As previously discussed (see supra § III(B)(1)), the court finds that plaintiff received proper notice of default. Moreover, advising plaintiff of an actionable claim under the terms of her loan does not constitute a threat to take action that cannot legally be taken. Accordingly, Adcock is entitled to summary judgment on the FDCPA claim.

*(2.) Louisiana Unfair Trade Practices Act*

Plaintiff also alleges that Adcock "violated the covenant of good faith and fair dealing and the Unfair Practices Act, and engaged in wrongful foreclosure with its co-defendants." As previously noted, the court construes this as a claim for violation LUTPA. Accordingly, the court applies the standards for establishing a LUTPA claim set forth above in section III(B)(4) to defendant Adcock.

Adcock is the law firm representing defendants Citibank and FCI Lender Services ("FCI"). The only specific factual allegation in plaintiff's complaint as to Adcock is that it, along with Citibank and FCI, threatened to take legal action it could not legally take. As previously discussed, the court finds that because plaintiff received the proper default notice, advising plaintiff of an actionable claim under the terms of her loan did not constitute a threat to take

12

action that cannot legally be taken. Thus, plaintiff has failed to allege fraud, misrepresentation, deception, or other unethical conduct as to Adcock that would support a LUTPA claim. Accordingly, Adcock is entitled to summary judgment on this issue. Therefore,

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment** filed by Citibank, N.A. as Trustee for CMTLI Asset Trust(Rec. Doc. 45) is **GRANTED**, and plaintiff's claims against it are hereby dismissed;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment** filed by FCI Lender Services, Inc.(Rec. Doc. 42) is **GRANTED in part** and **DENIED in part**. Summary Judgment is granted as to plaintiff's claims against FCI for violations of the Fair Debt Collection Practices Act (Count 5) and the Truth in Lending Act (Count 6), and those claims are dismissed. Summary judgment is denied as to plaintiff's claims under the Real Estate Settlement Procedures Act (Count 7) and the Louisiana Unfair Trade Practices Act (Count 9).

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment** filed by the Law Office of Herschel C. Adcock, Jr., LLC ("Adcock") (Rec. Doc. 43) is **GRANTED**, and plaintiff's claims against Adcock are dismissed.

New Orleans, Louisiana, this 11th day of October, 2019.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**